## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT ARMSTRONG WHITE,       \*

Petitioner                   \*

v                            \*        Civil Action No. RDB-18-1969

WARDEN,               \*

Respondent              \*

\*\*\*

## MEMORANDUM OPINION

Self-represented Petitioner Robert Armstrong White filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first degree rape, first degree sexual offense and kidnapping in the Circuit Court for Montgomery County, Maryland, on two grounds: ineffective assistance of counsel and prosecutorial misconduct. (ECF No. 1). Respondent argues that White's claims should be denied for lack of merit. (ECF No. 15 at 29). White filed a Reply in opposition. (ECF No. 20).

No hearing is necessary to resolve the matters pending before this Court. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons stated below, the Petition shall be denied and a certificate of appealability shall not issue.

### BACKGROUND

Two women, "TK" and "EL" were raped in separate incidents in Montgomery County, Maryland in 1979. Approximately 30 years later, the Montgomery County Police Department reopened the investigations and sent semen samples collected in each case for DNA testing. The

samples matched White's DNA profile in the Combined DNA Index System for offenders.  The DNA analysis matched the forensic evidence with White's DNA.  (ECF No. 15-1 at 196-197).

White was charged in one indictment with the two separate incidents. White requested, and the State agreed, that each case be tried separately. (*Id*. at 198-199).  Both cases were tried before juries in the Circuit Court for Montgomery County.

On March 23, 2012, the Honorable Mary Beth McCormick presiding, White was convicted of two counts of first degree rape and one count of robbery of victim "TK."  On May 30, 2012, Judge McCormick sentenced White to two consecutive life terms for the rapes, and a ten year consecutive term for the robbery. (*Id*. at 201-207).

On April 13, 2012, the Honorable Robert Greenberg presiding, White was convicted of two counts of first degree rape, one count of first degree sexual offense, and one count of kidnapping of victim "EL."  On May 30, 2012, Judge Greenberg sentenced White to life in prison for the two counts of first degree rape, life in prison for first degree sexual offense, and thirty years for kidnapping with all sentences to run consecutively to each other and consecutive to the sentences already imposed.  (*Id.* at 203-207).

On June 23, 2018, White filed this § 2254 Petition challenging the judgment of conviction in, the second of the two trials, the trial for the rape and robbery "E.L" on the grounds of ineffective assistance of counsel and prosecutorial misconduct. (ECF No. 1 at 1, 5, 7). White filed a separate § 2254 Petition attacking the judgment of conviction for the rapes and robbery of  "TK."  *White v. Warden*., RDB-18-1970 (D. Md).  The procedural facts and ineffective assistance of counsel claim in both cases are substantially the same.[1]

---

[1]  Neither party moved to consolidate these cases.

## FACTUAL AND PROCEDURAL HISTORY

### I.  Direct Appeal

White presented three questions on direct appeal: (1) Did the trial court err in denying White's Motion to Dismiss based on his right to a speedy trial under the Maryland Intrastate Detainer Act ("MIDA") and Maryland Rule 4-271 (*Hicks* rule)[2] and the Sixth Amendment; (ECF No. 15-1 at 208) (2) Did the trial courts err in admitting testimony via video conference in violation of White's confrontation rights; (3) Did the trial court err in allowing the State to make improper and prejudicial statements at closing argument?  *White v. State*, 223 Md. App. 353 (2015) (ECF No. 15-1 at 197).  The Court affirmed both judgments of conviction in a consolidated opinion on direct appeal.

Only the first question presented on appeal is relevant to White's federal habeas petition. In rejecting White's MIDA violation claim, the Court of Special Appeals explained that:

> The State initially obtained a district court statement of charges on November 23, 2010. A warrant was issued. [White] was incarcerated at the time of the charges, so the warrant automatically converted into a detainer. But [White] was never served with the arrest warrant because the State entered a nolle prosequi ("nol pros") on April 15, 2011, claiming that due to the unavailability of a witness, the State could not go forward with the case. [White] disputes the State's ground for entering the nol pros contending instead, that the State filed the nol pros to circumvent the Hicks rule. The State obtained a new statement of charges, warrant, and detainer on July 22, 2011.

(ECF No. 15-1 at 209).  The Court of Special Appeals analyzed White's claim against the background of the following undisputed dates.

---

[2] *State v. Hicks*, 285 Md. 310, 318 (1979). Under State statute and related court rule, collectively known as the "Hicks rule," a criminal trial in a circuit court must commence within 180 days of the first appearance of the defendant or defense counsel in that court, a deadline known as the "Hicks date." Unless the defendant consents to a trial date beyond the Hicks date, a continuance of the trial beyond the Hicks date may be granted only for "good cause." *Tunnell v. State*, 466 Md.565, 569 (2020).

November 23, 2010: The district court issued a statement of charges and an arrest warrant/detainer, because White was serving a sentence on an unrelated conviction at that time.

February 1, 2011: The State received [White's] request for disposition under the IDA.

April 15, 2011: The State entered a nolle prosequi, or "nol pros" as to the statement of charges.

April 19, 2011: The arrest warrant/detainer was recalled.

July 22, 2011: The district court issued a statement of charges (relating to the same charges) and an arrest warrant/detainer.

August 31, 2011: The arrest warrant was served on [White], and [White] appeared before the district court.

September 29, 2011: The State filed an indictment in the circuit court.

*See White,* 223 Md. App. at 364–67, *see also* ECF No. 15-1 at 209.

The Court of Special Appeals rejected White's argument that the Circuit Court erred in finding no violation of MIDA. The Court explained that the MIDA provides "[a]n inmate shall be brought to trial within 120 days after the inmate has delivered a written request for a final disposition of the indictment, information, warrant, or complaint" to the State's attorney and the appropriate court. [Corr. Servs.] § 8–502(b). If a case is not brought to trial within 120 days, then "the untried indictment, information, warrant, or complaint has no further force or effect" and "the court, on request of the inmate or the inmate's counsel, shall enter an order dismissing the untried indictment, information, warrant, or complaint *without prejudice*." [Corr. Servs.] § 8–503(e) (emphasis added). (ECF No. 15-1 at 210).

In affirming the trial court's determination, the Court of Special Appeals stated:

The circuit court found that the State did not violate [MIDA] because the State received [White's] request for disposition on February 1, 2011 and, within the

4

required 120–day timeframe, disposed of [White's] case by nol prossing the charges. We agree**. [White] did not file a request for disposition for the second detainer filed against him on July 22, 2011. Therefore, the only detainer at issue is the first detainer filed on November 23, 2010**. As to the first detainer, [White] properly requested final disposition under [MIDA], and the State received this request on February 1, 2011. The State thereafter entered a nol pros for the November 23, 2010, charges on April 15, 2011, and the detainer was revoked on April 19, 2011. Based on these facts, the detainer was "disposed of" within 120 days of [White's] request.

Even if the State had filed the nol pros after 120 days, the relief that would have been afforded for such a violation was already provided: a dismissal without prejudice. *See Gilmer v. State*, 389 Md. 656, 670, 887 A.2d 549 (2005) ("Obviously the type of nolle prosequi which does not bar future prosecution under another charging document has the same effect as a dismissal without prejudice." (quoting *State v. Morgan*, 33 Md. 44, 46 (1870))).

*White*, 223 Md. App at 372-74. (emphasis supplied).  White did not pursue further review in the Court of Appeals of Maryland.

## II.  Post Conviction Proceedings

On December 9, 2015, White, proceeding *pro se,* filed a Petition for Post Conviction Relief in the Circuit Court for Montgomery County, challenging both judgments of conviction. (ECF No. 15-1 at 246–50).  White alleged that trial counsel was constitutionally ineffective for "failing to mention" that, contrary to the Court of Special Appeals' finding in, *White*, 223 Md. App. at 373, he did in fact file a request for disposition of the second detainer filed against him on July 22, 2011, which contained the charges on which he was convicted. (ECF No. 15-1 at 248). White states that he "signed and submitted [a MIDA] request to the warden . . . on 8-2-11." (*Id.*).

On February 2, 2017, White, assisted by counsel, filed a Supplemental Petition for Post Conviction Relief (*Id.* at 251- 259).  Relevant here, the supplement provided:

The Petitioner contends that at the time the second statement of charges were issued on July 22, 2011, he was incarcerated at the North Branch Correctional Facility (NBCI) in Cumberland, Maryland, that he filled out the paperwork to request a speedy disposition of the Intrastate detainer on August 2, 2011, that his request was received by the District Court for Montgomery County and the Office of the State's

Attorney on August 16, 2011, and that copies of this paperwork were included in his "base file" at NBCI. A copy of these documents are attached to this petition. The Petitioner further contends that he had little contact with his trial attorney since he was incarcerated in Cumberland for the majority of the time his trials were pending but that he did tell his counsel that he had filed a second request for a speedy disposition of the charges, that he had copies of the paperwork documenting his request in his possession but that he told his attorney he wanted the attorney to obtain a copy for himself by contacting NBCI. The Petitioner alleges that based upon the paperwork documenting his request for a speedy disposition of his charges/detainer dated August 2, 2011, his attorney should have pursued a motion to dismiss the charges due to the State violating the one hundred and twenty day requirement of the IAD prior to both of his trials and that the failure to do so constitutes ineffective assistance of counsel.

(*Id.* at 252-53).   Counsel attached to the Supplemental Petition copies of MIDA paperwork from White's "base file" at North Branch Correctional Institution ("NBCI"), including a Notice of Intrastate Detainer placed on July 22, 2011, and an unsigned request for disposition of the July 22, 2011 charges. (ECF No. 15-1 at 258, 259).   The warden wrote a note on the signature line of the request for disposition of the charges "inmate refused to sign or acknowledge [right to] counsel." (*Id.* at 259).   Respondent accurately notes the unsigned request for disposition of charges bears no date stamp to confirm its receipt  by the State's Attorney or the court.  (ECF No. 15 at 17).  A third document consists of a computer printout of White's offense information, signed by White, and dated August 2, 2011.  A line has been checked next to the preprinted statement " I wish to file for a fast & speedy trial" although the witness signature line is blank. (ECF No. 15-1 at 257). Based on this information, the Supplemental Petition added a claim for prosecutorial misconduct:

[I]t is alleged that at the speedy trial hearing held before Judge Greenberg on April 10, 2012, since the State had received the Petitioner's request for a speedy disposition of the detainer lodged against him on August 16, 2011, the prosecutor was obligated to notify Judge Greenberg that the Petitioner had filed a second request for a speedy  disposition of his detainer when Petitioner's counsel failed to refer to that and that her failure  to do so constitutes prosecutorial misconduct.

(ECF No. 15-1 at 254).

On May 31, 2017, the Circuit Court for Montgomery County held a post conviction hearing. White, proceeding pro se after he discharged his postconviction counsel, argued that the Court of Special Appeals' opinion relied on the mistaken belief that he had not filed a MIDA request for final disposition of the July 22, 2011 charges. (ECF No. 15-11 at 4-16, 20-23, 28-30). At the post conviction hearing, White's trial counsel testified that he had filed motions to dismiss for an IAD violation and for a speedy trial based on the detainer, and had filed a memorandum arguing the State entered the nolle prose to "circumvent the 180-day rule [under *Hicks*]." (ECF No. 15-11 at 31-32. ECF No. 15-1 at 43-45, 47-54). Trial counsel added "And I am certain that I can say to you that I thought, by filing the motion to dismiss for speedy trial, that I was getting you greater relief than you would have been entitled to under IAD." (ECF No. 15-11 at 31-32). Trial counsel testified further that he had no independent knowledge or recollection of a second request for disposition of charges. (*Id.* at 31, 42).

The Circuit Court denied post conviction relief in a ruling from the bench that was later adopted by reference in a written order dated July 20, 2017. (ECF No. 15-1 at 34 ECF No. 15-11 at 55-62). The Circuit Court ruled that White had not met his burden to show deficient representation and prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). The Court explained that relief for a MIDA violation result is the dismissal of charges without prejudice and White would have been recharged. (ECF No. 15-11 at 56). Consequently, White had not shown that but for counsel's alleged error was constitutionally deficient representation or the outcome of the proceedings would have been different but for that alleged ineffective representation. (ECF No. 15-11 at 56).

Next, the Circuit Court rejected the prosecutorial misconduct claim, noting that White had introduced no supporting evidence. White did not call the prosecutor as a witness at trial and the

testimony of his trial counsel did not establish what the prosecutor's files contained or what the prosecutor knew about the request for disposition.   (ECF No. 15-11).   The post conviction transcript shows White elicited no evidence that the prosecutor knew about the purported request for disposition or that defense counsel's representations were erroneous or false and needed to be corrected. (*Id.* at 59).

The Court of Special Appeals denied White's Application for Leave to Appeal on November 7, 2017.  (ECF No. 15-1 at 34, docket entry 260; ECF No. 272-73).

## III.  Section 2254 Petition

White raises two claims in this Petition.   First, he claims trial counsel provided constitutionally ineffective assistance of counsel by "misinforming" the court that White had not filed a request for disposition of the specific charges for which he was ultimately convicted, which were the subject of a detainer that the State had filed  under the Maryland's Intrastate Detainer Act ("MIDA"), Md. Code Ann., Corr. Servs. §§ 8-501 thru 8-503.  (ECF No. 1 at 5).  Second, White alleges that, because the prosecutor's file documented the existence of a pertinent request for disposition, the prosecutor engaged in "misconduct" by allowing defense counsel's representation to the court to go uncorrected. (ECF No. 1 at 7)

**STANDARD OF REVIEW**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted);

8

*see also White v Woodall*, 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court

decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

## ANALYSIS

### I.  Ineffective Assistance of Counsel

When reviewing an ineffective assistance of counsel claim, the analysis is "doubly deferential." *Valentino v. Clarke*, _F.3d_ 2020 WL 5034418 at *14 (4th Cir. August 26, 2020) (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)).  A federal habeas court must review the claim through "highly deferential" lens of *Strickland* as well. *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020) (quoting *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012)).

To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. *Strickland,* 466 U.S. at 687.  "Deficient performance requires  showing 'that counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms' and in light of 'all the circumstances' of the representation." *Owens,* 967 F.3d at 412 (4th Cir. 2020) (quoting *Strickland*, 466 U.S. at 688). To satisfy this high bar, the burden is on the petitioner to establish " 'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.' " *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  The Supreme Court has emphasized that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy." *Id.* at 689. In the context of a § 2254 proceeding, it is not

sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a petitioner must meet a higher burden and show that the state court applied Strickland in an objectively unreasonable manner. *See Bell*, 535 U.S. at 698–99.

For the prejudice prong, a court must consider whether "a reasonable probability" existed that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

White claims his trial attorney provided constitutionally ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the Constitution by failing, despite White's request, to check his base file and to file a pretrial motion to dismiss under Maryland's Intrastate Detainer Act. (ECF No. 1 at 5).  White asserts that had trial counsel filed such a motion, "it would have prevented the rendition and entry of the judgment questioned."  *Id.*  In denying this claim, the post conviction court reasoned that even if trial counsel had been factually inaccurate in stating White had not filed second request for disposition, and that trial counsel failed to request a final disposition of charges under MIDA as a result, the only remedy for failure to try charges subject to a MIDA request is dismissal of the charging document without prejudice..  Even if White had properly presented his second MIDA request for disposition of charges, *Strickland*  does not compel an attorney to present all possible theories or follow preclusive (speedy-trial) theories with a third theory that would have, if granted, dismissed the case without prejudice to refiling the charges.

Further, White does not show there was a reasonable probability that, but for counsel's alleged error, the result of the proceedings would have been different and therefore fails to show

prejudice under *Strickland*.   Even if counsel had filed a Motion to Dismiss based on the alleged second request for disposition under MIDA, it would have been more than reasonable for the State to refile the serious charges White was facing in light of the substantial DNA evidence.

On this record, this Court concludes that the state post-conviction court's decision was not based on an unreasonable application of federal law, that it was based on a reasonable determination of the facts, and that it correctly and reasonably applied the *Strickland* standard to those facts.   Thus, this Court denies federal habeas relief as to this claim.

## II.   Prosecutorial Misconduct

"A fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955), so prosecutors must comport themselves accordingly.   *See Berger v. United States*, 295 U.S. 78, 88 (1935).   In order to establish prejudicial misconduct on the part of the prosecutor, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted); *United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010).   To prevail on a claim of prosecutorial misconduct, a petitioner "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'"   *Caro*, 597 F.3d at 624-25 (quoting *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002)).

The post conviction court found no merit to this claim.   White produced no evidence that the prosecutor knew about White's request for disposition and, therefore, allowed to go uncorrected trial counsel's representation to the trial court that none existed.   Finding that no evidence exists to prove a fact, is a factual finding entitled to deference under the federal habeas statute, and White has not met his burden to show by clear and convincing evidence that the

postconviction court's assessment of the evidence was wrong. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

White reasserts in his Reply that he filed a second request for disposition under MIDA, and filed two United States Post Service "green cards" that were attached to his Supplemental Petition for Post Conviction Relief, but are in the state record. (ECF No. 16 at 4l; ECF No. 15-1 at 251-260).  One card was addressed to the Montgomery County District Court, signed as received by "Frank J. Bienes," and dated as received on August 15, 2011. The second was addressed to the Montgomery County States Attorney, and signed by Terrie L. Hodson as received on August 16, 2011  ECF No. 16 at 7, 8.  White does not assert, nor does the record show that he introduced the cards in evidence, elicited testimony about the cards, or otherwise presented evidence the prosecutor was aware of these cards or a request for disposition of charges during the post conviction hearing to find the state court's finding based on an unreasonable determination of the facts given the evidence presented.

The post conviction court's determination that White did not meet his burden to show the prosecutor's conduct was improper or prejudicially affected his substantial rights to deprive him of a fair trial.  The state court's decision is well supported by the record, and was neither "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"; nor is it based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, the state court decision survives scrutiny under federal habeas review.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137

S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El* 537 U.S. at 327. Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2).  White may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED. The Court declines to issue a certificate of appealability. A separate Order follows.


__9/15/2020_____                           _____/s/_____
Date                                                            RICHARD D. BENNETT
                                                                UNITED STATES DISTRICT JUDGE